**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>METRO RISK MANAGEMENT, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 23-20391 (GC) (RLS)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon the Motion to Dismiss Plaintiff's Complaint for improper venue pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(3) or for failure to state a claim pursuant to Rule 12(b)(6) filed by Defendants Metro Risk Management, LLC (Metro Risk) and Nautilus International Holding Corporation (Nautilus). (ECF No. 9.) Plaintiff opposed, and Defendants replied. (ECF Nos. 12 & 13.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion is **GRANTED** in part and **DENIED** in part. The case is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim under Rule 12(b)(6).

### I.   BACKGROUND

This is one of more than forty cases that Plaintiff Abira Medical Laboratories, LLC, has filed in the United States District Court for the District of New Jersey or had removed here from

the Superior Court of New Jersey since June 2023.  In each of these cases, Plaintiff sues health insurers and third-party administrators for their alleged failure to pay Plaintiff "for its laboratory and diagnostic testing services" that Plaintiff provided to their insureds.  (*See* ECF No. 1 (Complaint) ¶ 22.)

Plaintiff "is a domestic limited liability company organized under the laws of the State of New Jersey."  (*Id.* ¶ 2.)  Defendants are alleged to "provide health insurance services throughout New Jersey" and have their principal places of business in Long Beach, California.[1]  (*Id.* ¶¶ 3-4.)

Plaintiff "operated a licensed medical testing laboratory business" that "performed clinical laboratory, toxicology, pharmacy, genetics, and addiction rehabilitation testing services on specimen submitted by referring medical service providers."  (ECF No. 1 ¶¶ 14-15.)  Plaintiff alleges that pursuant to "industry practice," when insureds are referred to a laboratory to submit specimen for testing, the laboratory tests the specimen and "submits a claim/invoice to the [insured's] health insurance issuer," who then "pays the claim pursuant to the applicable fee list or fee schedule."  (*Id.* ¶ 18.)  Plaintiff asserts any "licensed testing laboratory can plug and play into this industry practice, to establish a contract with any health insurance issuer" by performing testing services for the insurer's members.  (*Id.* ¶ 19.)  Accordingly, Plaintiff contends that its performance of testing services for Defendants' insureds "established a contract" between Plaintiff and Defendants.  (*Id.* ¶ 20.)  But Defendants "either failed to pay or underpaid Plaintiff for its laboratory and diagnostic testing services."  (*Id.* ¶ 22.)  The amount due for these services is alleged to total $51,527.00.  (*Id.* ¶ 35.)  Plaintiff does not identify the individual insureds/claimants in this

---

[1] Metro Risk represents that because its sole member is a Texas corporation with a principal place of business in Connecticut, it is a citizen of Texas and Connecticut.  (ECF No. 4 at 1.)  Nautilus is a Massachusetts corporation with a principal place of business in California.  (*Id.*)

case, the type of health insurance plans under which the insureds/claimants were covered, or any specific provisions in any plan that entitles the insureds/claimants to benefits from Defendants.

Plaintiff asserts seven causes of action against Defendants, other unidentified "affiliates," and unnamed companies and persons: Count One for breach of contract; Count Two for breach of the implied covenant of good faith and fair dealing; Count Three for fraudulent misrepresentation; Count Four for negligent misrepresentation; Count Five for equitable and promissory estoppel; Count Six for quantum meruit/unjust enrichment; and Count Seven for violations of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-2, under which Plaintiff seeks treble damages for a total of $154,581.00.  (*Id.* ¶¶ 29-79.)

This case was removed to this Court from the Superior Court of New Jersey, Mercer County, Law Division, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (*See* ECF No. 1.)  On January 22, 2024, Defendants moved to dismiss the Complaint pursuant to Rules 12(b)(3) and 12(b)(6).  (ECF No. 9.)  Plaintiff opposed on February 6, and Defendants replied on February 15.  (ECF Nos. 12 & 13.)

## II.     LEGAL STANDARD

### A.  RULE 12(B)(3)—VENUE

Rule 12(b)(3) permits a court to dismiss a complaint or individual claim for improper venue.  Under 28 U.S.C. § 1391, venue is proper in a judicial district where: (1) any defendant resides, if all defendants reside in the same state; (2) a "substantial part of the events or omissions giving rise to the claim occurred"; or (3) the defendant is subject to the court's personal jurisdiction, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(b)(1)-(3).  On a Rule 12(b)(3) motion, the moving party bears the burden of establishing improper venue. *See Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 160 (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982)).  A court considering a Rule 12(b)(3)

3

motion must accept the allegations of the complaint as true unless the allegations are contradicted by the defendant. *Id.* at 158 n.1 (citation omitted).

### B. Rule 12(b)(6)—Failure to State a Claim Upon Which Relief Can Be Granted

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### III. DISCUSSION

#### A. Motion to Dismiss for Improper Venue

Defendants argue that the Court must dismiss the Complaint under Rule 12(b)(3) because Plaintiff "cannot maintain suit for workers' compensation claims in this Court." (ECF No. 9-1 at

4

12.[2]) Metro Risk claims that it is "the third-party claims administrator of the California Self-Insurers' Security Fund ('CSISF'), a non-profit mutual fund corporation chartered to continue workers' compensation benefits after a private self-insured employer defaults on its workers' compensation obligations." (*Id.* at 8.) Nautilus "owned Metro Risk until September 2017," when Metro Risk "was sold to another parent company." (*Id.*)  According to Defendants, the claims at issue in this matter "encompass ten claims on behalf of a California-based patient for claims with dates of service between January 11, 2016 and September 15, 2016." (*Id.*; ECF No. 9-2.) "The claimant underwent various lab tests for controlled substances as part of her treatment," and payments for each of the tests were denied "for numerous reasons, including unauthorized providers, unauthorized treatments, and failure to seek prior authorization." (ECF No. 9-1 at 8-9.) Defendants argue that because Plaintiff's claims "all arise under the California Workers' Compensation Act for services provided in California to a California worker," such claims "are subject to the exclusive jurisdiction of the California Worker's Compensation Appeals Board ('WCAB')." (*Id.* at 12-13.) Defendants cite *Marsh & McLennan, Inc. v. Superior Court*, in which the California Supreme Court held that the California's workers' compensation system "preempts a private cause of action by an injured worker against the independent claims administrator of his self-insured employer for the delay or refusal to pay compensation benefits." 774 P.2d 762, 762-63 (Cal. 1989). (ECF No. 9-1 at 13.)

Defendants have not provided, nor is the Court aware of, any case in which a federal district court dismissed common-law claims for improper venue under Rule 12(b)(3) due to being preempted by the California Workers' Compensation Act. Instead, the proper question appears to

---

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

be whether a choice-of-law analysis is necessary.  "[T]he California Workers' Compensation Act's exclusivity provisions are 'substantive' provisions which, under *Erie*, a district court sitting in diversity is bound to follow."  *Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 531 n.8 (W.D. Pa. 2021), *aff'd on other grounds*, 2022 WL 2763698 (3d Cir. Jul. 15, 2022) (quoting *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1133 (9th Cir. 2011)); *see also Linton v. Owens-Illinois, Inc.*, 2012 WL 3715878, at *2-3 (E.D. Mo. Aug. 27, 2012) (conducting a choice-of-law analysis and finding that California law controlled before determining whether the plaintiff's common-law claims were barred by the exclusive remedy provision of the California Workers' Compensation Act); *Canosa v. Ziff*, 2019 WL 498865, at *12 n.16 (S.D.N.Y. Jan. 28, 2019) (describing the question of whether New York or California's workers' compensation statutes precluded a California resident's common-law negligence claim as a "choice-of-law question").

Federal courts sitting in diversity must apply the choice-of-law rules of their forum states. *Snowdy v. Mercedes-Benz USA, LLC*, Civ. No. 23-1681, 2024 WL 1366446, at *10 (D.N.J. Apr. 1, 2024) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  New Jersey courts have adopted the two-part "most significant relationship" test of the Restatement (Second) of Conflict of Laws to determine which forum's laws should apply.  *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699 (D.N.J. 2011) (citation omitted).  Although "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss,"[3] because New Jersey's choice-of-law analysis "is fact intensive, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no

---

[3]     *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 499 (D.N.J. 2014) (quoting *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011)).

discovery has taken place," or when the parties have not fully briefed the issue. *See Snowdy*, 2024 WL 1366466, at *10 (collecting cases).

On the present record, the Court finds that it would be inappropriate to conduct a choice-of-law analysis at this stage. To the extent that conflicts exist (or do not exist) between the laws of New Jersey and California, the parties' motion papers do not conduct a choice-of-law analysis for the Court's review. Nor do they provide the information necessary for the Court to perform its own analysis beyond Defendants' assertion that all of Plaintiff's claims "arise under the California Workers' Compensation Act" and are therefore "preempted." (ECF No. 9-1 at 12-13.) The Court therefore rejects Defendants' preclusion argument under the California Workers' Compensation Act without prejudice to Defendants' renewing the argument at a later time.

The Court "must still determine whether Plaintiffs have succeeded in stating a claim in order for that claim to survive the pending motions to dismiss." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011). Since Plaintiff brought its claims under New Jersey law and both parties brief the sufficiency of the claims under New Jersey law, the Court will, for purposes of deciding the present motion to dismiss, apply New Jersey law.[4] *See id.*; *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 591 n.5 (D.N.J. 2016).

### B. COUNTS ONE AND TWO—BREACH OF CONTRACT & BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Defendants argue that the breach-of-contract claim fails because Plaintiff has not pled with adequate specificity the alleged contract's "essential terms," including "the price of services for

---

[4] Defendants argue that all of Plaintiff's claims are time-barred under their respective statutes of limitations, regardless of whether California law or New Jersey law applies to Plaintiff's common-law claims. (ECF No. 9-1 at 14-15.) Plaintiff contends that because it has "timely appealed the claims that have been denied by Defendants," and that "Defendants have not yet issued a formal denial of the appeal," the statutes of limitations have not yet run. (ECF No. 12 at 11.) Because Plaintiff's pleadings are silent as to specific dates of the claims at issue and the "time bar must be evident on the face of the complaint for the complaint to create a basis for dismissal,"

7

which Abira seeks reimbursement and who was supposed to pay it." (ECF No. 9-1 at 17.) Instead, Plaintiff merely refers to "industry practice" without even alleging that "Defendants ever agreed to adhere to industry practice with Abira." (*Id.* at 17-18.)

Plaintiff counters that it has alleged that it is an "authorized representative" pursuant to 29 C.F.R. § 2560.503-1(b)(4) and that Defendants "failed to pay for the laboratory services rendered in breach of Defendant[s'] agreement with the claimants (now represented by Abira)." (ECF No. 12 at 11.) Plaintiff also argues that because Plaintiff "alleged that Defendants paid for *some* of the services rendered . . . thereby confirming the existence of an agreement between the parties via its course of conduct," Plaintiff has sufficiently pled a claim for breach of contract. (*Id.* at 12.)

The Court disagrees. First, nowhere in the Complaint does Plaintiff allege that it is an "authorized representative" of the currently unidentified insureds under ERISA regulation 29 C.F.R. § 2560.503-1(b)(4). In fact, the Complaint does not plead that the plans at issue are ERISA plans to which the regulation would be applicable. Further, courts have held that the regulation "is limited to internal appeals," not civil actions for benefits. *Prestige Inst. for Plastic Surgery, P.C. o/b/o S.A. v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 20-3733, 2021 WL 4206323, at *3 (D.N.J. Sept. 16, 2021); *Cooperman v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 19-19225, 2020 WL 5422801, at *3 (D.N.J. Sept. 10, 2020) ("This Court has repeatedly held that this regulation applies only to internal claims and appeals, not to federal lawsuits brought after the plan member exhausts those appeals.").[5] And even if the regulation

---

*Perelman v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013), the Court will deny Defendants' Motion to Dismiss on this basis without prejudice to Defendants' ability to renew the defense later.

[5]     This view is shared by courts outside this District. *See, e.g.*, *OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*, 671 F. Supp. 3d 888, 891-92 (N.D. Ill. 2023) ("[I]n the regulations governing ERISA, 29 C.F.R. § 2560.503-1(b)(4) expressly allows authorized representatives like OSF to file *internal* claims and appeals but, importantly, does not confer standing to authorized representatives to pursue civil actions against a plan."); *Park Ave. Aesthetic*

enabled Plaintiff to sue on behalf of insureds for benefits, Plaintiff would still be required to "identif[y] a particular [plan] provision . . . which . . . entitles [it] to benefits," which Plaintiff has not done. *BrainBuilders, LLC v. Aetna Life Ins. Co.*, Civ. No. 17-03626, 2024 WL 358152, at *7 (D.N.J. Jan. 31, 2024) (collecting cases).

Nor has Plaintiff alleged enough facts to sustain a breach of contract claim. It is not enough for Plaintiff to generally allege that Defendants breached a contract by failing to pay for services pursuant to some currently unidentified agreement with some currently unidentified claimants. Under New Jersey law, to state a breach of contract claim, Plaintiff cannot rely solely on an alleged "general obligation" without tying it to a specific contractual provision. *Perry v. Nat'l Credit Union Admin.*, 2021 WL 5412592, at *2 (3d Cir. Nov. 19, 2021). A plaintiff must state facts that allow for the plausible inference that a contract exists and that provisions in that contract were violated. *See Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 303 (D.N.J. 2019) ("The plaintiff must . . . specifically identify portions of the contract that were allegedly breached." (quoting *Faistl v. Energy Plus Holdings, LLC*, Civ. No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012))); *Etrailer Corp. v. Unbeatablesale.com, Inc.*, Civ. No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (citation omitted)); *Riachi v. Prometheus Grp.*, Civ. No. 16-2749, 2016 WL 6246766, at *3 (D.N.J. Oct. 25, 2016) ("Although the Complaint does reference an 'Agreement' between the parties . . . , it does *not* provide any specific details as to when the parties entered a contract, what the terms of the contract were, or

---

*Surgery, P.C. v. Empire Blue Cross Blue Shield*, Civ. No. 19-9761, 2021 WL 665045, at *7 (S.D.N.Y. Feb. 19, 2021) ("[A] medical provider's status as an Authorized Representative does not . . . independently provide a cause of action pursuant to ERISA.").

how Defendants' actions might have violated those terms. . . . Without more, Plaintiff's Complaint has not plausibly stated a claim for breach of contract.").

Plaintiff argues that "courts in this district permit contract claims to survive a motion to dismiss" where "the long-standing course of dealing between the parties . . . confirms the presence of an agreement." (ECF No. 12 at 12 (citing *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, Civ. No 21-11313, 2022 WL 111061, at *5 (D.N.J. Jan. 12, 2022)).[6]) But unlike cases where it is alleged that "an out-of-network provider and an insurer regularly dealt with each other, and the provider would obtain preauthorization," *see MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2021 WL 2010582, at *3 (D.N.J. May 19, 2021) (collecting cases), there is no allegation in this case that Plaintiff obtained preauthorization from Defendants for the services rendered. Preauthorization is often critical when a healthcare provider alleges an implied contract because the "preauthorization from the insurer plausibly manifests to the provider that the insurer will reimburse the provider for the costs of the service." *Gotham*, 2022 WL 111061, at *5; *see also MedWell*, 2021 WL 2010582, at *3 ("The allegations that MedWell had a regular billing relationship with Cigna lasting fifteen years, coupled with a pattern of preauthorization, takes the Amended Complaint beyond '[m]erely claiming that an implied contract arose 'from the course of conduct.' . . . Allegations about preauthorization allow an inference of the mutuality of obligation necessary for contract formation, and that is sufficient to survive a motion to dismiss." (quoting *Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659, 663 (3d Cir. 2016))).

Without preauthorization, Plaintiff's generalized allegations that it expected to be reimbursed by Defendants based on "industry practice" and that Defendants paid some claims at

---

[6]   Plaintiff also cites *James v. Zurich-American Ins. Co. of Illinois*, 230 F.3d 250, 255-56 (3d Cir. 2000). But in *James*, the parties' course of dealings was relevant to the interpretation of a contract's provision—not the existence of a contract. *Id.*

10

some point do not create a plausible basis for the Court to presume that the parties' "course of dealing" satisfies the elements for a contract-based claim. (ECF No. 1 ¶¶ 18, 22.) *See, e.g.*, *Ctr. for Special Procs. v. Connecticut Gen. Life Ins. Co.*, Civ. No. 09-6566, 2010 WL 5068164, at *6 (D.N.J. Dec. 6, 2010) (dismissing contract claims where the plaintiff alleged that the defendant paid "for services [the plaintiff] provided to various patients who were . . . insureds or plan members," finding that the allegation did not "allow the Court . . . to discern the alleged terms of [the defendants'] 'promise and/or contract to pay'"); *see also Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 494 (D.N.J. 2023) ("The Complaint lacks factual allegations showing the parties made an agreement containing 'certain terms,' and so, Premier has failed to state a breach of contract claim." (citation omitted)). Therefore, Plaintiff's breach-of-contract claim in Count One is dismissed without prejudice.

Because the Court finds that Plaintiff has not adequately pleaded the existence of a contract or its breach, the claim for breach of the implied covenant is not plausibly stated. *See, e.g.*, *Hall v. Revolt Media & TV, LLC*, Civ. No. 17-2217, 2018 WL 3201795, at *3 (D.N.J. June 29, 2018) ("Where a plaintiff fails to adequately allege the existence of a contract, plaintiff cannot allege that defendant breached the covenant of good faith and fair dealing."); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law."). The breach of the implied covenant claim also appears to be duplicative of the breach-of-contract claim and subject to dismissal on that basis. *See McMillian v. GEICO Indem. Co.*, Civ. No. 23-01671, 2023 WL 7039535, at *6 (D.N.J. Oct. 26, 2023).

Accordingly, Counts One and Two are dismissed without prejudice.

### C. Counts Three, Four, and Five—Fraudulent Misrepresentation, Negligent Misrepresentation, Promissory Estoppel, and Equitable Estoppel

Counts Three through Five in the Complaint—for fraudulent misrepresentation, negligent misrepresentation, and equitable and promissory estoppel—all rely on the same allegations: that Plaintiff relied on "the course of conduct between Plaintiff and Defendants, and also relied upon Defendants' representations to compensate Plaintiff for performing testing services to Defendants' members and/or subscribers." (ECF No. 1 ¶¶ 43, 53, 59.)

These allegations, however, are insufficient to plausibly state each of these claims.[7] Plaintiff has not identified any claimant/insured, any plan or type of plan under which they were insured, or the specific provision of any plan that would entitle a claimant/insured to be covered for the costs of Plaintiff's services. Nor has Plaintiff pled any sufficient factual matter allowing this Court to find that there was ever a misrepresentation or a clear and definite promise on which it was reasonable for Plaintiff to rely. *See, e.g.*, *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 360 (D.N.J. 2021) (dismissing fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and equitable estoppel claim where the pleading did not go "beyond generalities" and did not identify "a speaker or specific communication"); *Premier Orthopaedic Assocs. of S. NJ, LLC v. Aetna, Inc.*, Civ. No. 20-11641, 2021 WL 2651253, at *4 (D.N.J. June 28, 2021) ("These vague allegations as to which services Aetna agreed to cover, and how much Aetna agreed to pay Plaintiff for these services, do not provide sufficient facts to support the plausibility of Plaintiff's breach of contract, promissory estoppel, and accounts stated claims. Each of these claims requires Plaintiff to show the specific terms Aetna agreed to (for breach of contract) or the

---

[7] There also seems to be a question "as to whether New Jersey courts recognize a claim of equitable estoppel as an independent cause of action." *D'Urso v. BAMCO, Inc.*, Civ. No. 22-03723, 2023 WL 5623945, at *10 (D.N.J. Aug. 31, 2023) (collecting cases). The Court addresses Plaintiff's claims without resolving this conflict—if one exists at all.

precise promise Aetna made (for promissory estoppel and accounts stated)."); *Bergen Beverage Distributors LLC v. E. Distributors I, Inc.*, Civ. No. 17-04735, 2017 WL 5714702, at *3 (D.N.J. Nov. 28, 2017) (dismissing negligent misrepresentation claim where the plaintiffs did "not indicate who actually made the statements to whom or when they were made, nor do they indicate how many hours were promised and how many were actually worked"); *Capers v. FedEx Ground*, Civ. No. 02-5352, 2012 WL 2050247, at *2 (D.N.J. June 6, 2012) (dismissing promissory estoppel claim where the allegations were "little more than a recitation of the elements" and the pleading did "not allege any specific facts supporting the claim").

Accordingly, Counts Three through Five are dismissed without prejudice.

### D.  COUNT SIX—QUANTUM MERUIT/UNJUST ENRICHMENT

The quantum meruit/unjust enrichment claim in Count Six also fails at this time because Plaintiff has not plausibly pleaded that benefits were conferred on Defendants. Indeed, both quantum meruit and unjust enrichment "require[] a determination that defendant has benefitted from plaintiff's performance." *MHA, LLC*, 539 F. Supp. 3d at 361 (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017)). While district courts in this Circuit have long held that benefits for medical services "inure[d] only to the patients treated," not the insurers,[8] at least one court in this District has interpreted the Third Circuit's opinion in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.* as opening the door for unjust

---

[8]  *See, e.g.*, *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, Civ. No. 18-2608, 2019 WL 4750010, at *6 (D.N.J. Sept. 30, 2019) ("[T]his Court 'consistently' dismisses unjust enrichment claims when a healthcare provider sues an insurer for the unreimbursed costs of a procedure performed on an insured.").

13

enrichment claims against insurers. *MHA, LLC*, 539 F. Supp. 3d at 361 (citing *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 241 n.26 (3d Cir. 2020)).

In *Plastic Surgery Center*, the Court of Appeals underscored that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured."  967 F.3d at 240.  And because the obligation the insurer owes typically springs from a plan, the health provider must plausibly establish that a plan exists, the insurer "'received a benefit'—*i.e.*, the discharge of its duties under that plan," and that "retention of that benefit without payment would be unjust."  *Id.* at 241 (citations omitted).

Here, even accepting that an unjust enrichment claim could be maintained against Defendants, Plaintiff has not adequately pled its claim because its allegations do not plausibly establish that a plan exists under which Defendants "received a benefit."  Plaintiff's Complaint does no more than recite the necessary elements, alleging that "in performing the testing services to Defendants' subscribers and/or members, . . . for which Defendants, in fact, did not pay, or paid at amounts far below those required by Defendants' own policies and protocols, Plaintiff conferred a benefit upon . . . Defendants." (ECF No. 1 ¶ 65.)  But notably, Plaintiff does not identify any of Defendants' insureds, does not identify what duties Defendants owed to the insureds under the specific terms of any plan, and does not plead allegations that allow this Court to infer that Defendants unjustly retained a benefit under any plan without payment.

Accordingly, Count Six is dismissed without prejudice.

E. COUNT SEVEN—NJCFA

Plaintiff's last claim is for violations of the NJCFA.  To assert a claim under the NJCFA, a plaintiff must allege three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the

14

ascertainable loss. *Kaplan v. Gen. Elec. Co.*, Civ. No. 22-05296, 2023 WL 4288157, at *7 (D.N.J. June 30, 2023) (citing *Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007)). To satisfy the first prong, Plaintiff must demonstrate that defendant engaged in an "unlawful practice," which is defined in the NJCFA to include "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2. Moreover, claims under the NJCFA "are required to meet the particularity requirement of Fed. R. Civ. P. 9(b), which requires more than the *Twombly-Iqbal* standard; including notice of the precise misconduct with which [defendant is] charged." *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301 (D.N.J. 2019) (internal citations and quotations omitted). The complaint must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (citation omitted).

Here, Plaintiff does not plead its claim under the NJCFA with sufficient particularity to survive Defendants' Motion to Dismiss.[9] Plaintiff alleges only that "Defendants knew they could not or would not pay Plaintiff the contractual, customary, and reasonable charges for" Plaintiff's services, thereby securing Plaintiff's services through "misrepresentation . . . constituting an unconscionable business practice." (ECF No. 1 ¶ 76.) Plaintiff does not allege what specific representations Defendants made, who made them and to whom, and when they were made.

---

[9] Plaintiff also appears to have abandoned its NJCFA claim, having failed to respond to Defendants' arguments in its opposition brief. *See Sevajian v. Castro*, Civ. No. 20-1591, 2022 WL 17733675, at *3 n.1 (D.N.J. Dec. 6, 2022) ("Plaintiff appears to have abandoned his negligent hiring claim, as he did not offer any argument in opposition to Defendants' motion to dismiss this claim.").

15

Because Plaintiff's allegations amount to no more than a formulaic recitation of the elements, Plaintiff's NJCFA claim is deficient under Rule 9(b). *See, e.g.*, *Latraverse v. Kia Motors of America, Inc.*, Civ. No. 10-6113, 2011 WL 3273150, at *5 (D.N.J. Jul. 27, 2011) (dismissing a claim for a violation of the NJCFA under Rule 9(b) for failing to "identify with particularity" the alleged false statements or their speaker, noting that "Rule 9(b) requires that, at a minimum, Plaintiff identify the speaker"); *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (dismissing an NJCFA claim for lack of particularized allegations).[10]

For these reasons, Count Seven is dismissed without prejudice.

### F. ATTORNEY'S FEES

Finally, Defendants ask the Court to award it attorney's fees. Defendants accuse Plaintiff of filing "a meritless lawsuit in bad faith" and assert that Plaintiff "is doing the same to 37 other insurance-related entities in this Court." (ECF No. 9-1 at 24-25.) But Defendants have not provided evidence showing that Plaintiff has "multiplie[d]" these proceedings "unreasonably and vexatiously" pursuant to 28 U.S.C. § 1927, nor have Defendants filed a separate motion for sanctions under Rule 11 describing "the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c). Accordingly, an award of fees as a sanction is not warranted in this case. Defendants have not shown that counsel's actions here rise to the level of "serious and studied

---

[10] The NJCFA also may not apply to the denial of benefits allegedly due under an insurance policy. "[L]ower New Jersey courts have previously held that an individual denial of insurance benefits is not subject to the [NJCFA]." *Breitman v. Nat'l Surety Corp.*, Civ. No. 14-7843, 2015 WL 5723141, at *6 n.8 (D.N.J. Sept. 29, 2015) (collecting cases). But since the United States Court of Appeals for the Third Circuit in *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007) held that the NJCFA applied to allegations of a scheme to deny insureds their rightful benefits, "at least some courts in this district have permitted insurance payment claims based on the [NJCFA]." *Breitman*, 2015 WL 5723141, at *6 n.8 (citing *Bannon v. Allstate Ins. Co.*, Civ. No. 14-1229, 2015 WL 778828, at *5 (D.N.J. Feb. 24, 2015)). The Court need not resolve this issue on the current Motion to Dismiss because even if Plaintiff could premise its NJCFA claim on an alleged denial of insurance benefits, it has both abandoned its NJCFA claim and failed to plead with the requisite particularity under Rule 9(b).

disregard for the orderly process of justice." *Jorjani v. New Jersey Inst. of Tech.*, Civ. No. 18-11693, 2023 WL 2986694, at *15 (D.N.J. Apr. 18, 2023) (quoting *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986)).

## IV.  CONCLUSION

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED** in part and **DENIED** in part. An appropriate Order follows.

Dated: July 29, 2024

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE